UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICK RAPHAEL, RYAN HENRY,
KRISTY DIXON, DONNA SAYERS, and
BIANCA RUIZ,

                        Plaintiffs,                  **MEMORANDUM AND ORDER**
                                                                                 CV 03-1675 (WDW)

          -against-

THE COUNTY OF NASSAU, POLICE
SERGEANT MICHAEL MULCAHY; POLICE
OFFICERS KEVIN HIGBIE, ANTHONY
CAMPAGNA, and JOHN and/or JANE DOES(S)

                        Defendants.
------------------------------------------------------------X

**APPEARANCES:**

**LAW OFFICES OF DAN CHERNER**
Attorney for Plaintiffs
350 Broadway
Suite 1204
New York, New York 10013

**LORNA B. GOODMAN**
**NASSAU COUNTY ATTORNEY**
Attorney for Defendants
One West Street
Mineola, New York 11501

**WALL, Magistrate Judge:**

      Before the court, on consent of the parties, is a motion for partial summary judgment by defendants on the following: (1) claim of municipal liability under 42 U.S.C. §1983; (2) New York state claims; (3) unreasonable search claim; and (4) claims against the Nassau Police Department. The plaintiffs partially oppose the motion, although their papers only directly address the municipal liability claim. The court scheduled oral argument on the motion for

June 3, 2005 and notified all the parties, but plaintiffs did not appear and thus did not avail themselves of the opportunity to further argue against the motion. The court, therefore, decides the motion on the papers before it. For the reasons set forth herein, the defendants' motion is granted.

## BACKGROUND

In April 2003, the plaintiffs, Patrick Raphael, Ryan Henry, Kristy Dixon, Donna Sayers, and Bianca Ruiz, commenced this civil rights action pursuant to 42 U.S.C. §1983, asserting various constitutional violations. The plaintiffs' claims arise from the actions taken by the police in the early hours of April 9, 2000 at a residence located at 18 Oak Street in Elmont. It is undisputed that Raphael and a friend had prepared and distributed a flyer advertising a spring break party to take place beginning at 10:00 p.m. on April 8, 2000 at 18 Oak Street. According to the Complaint,[1] several police officers approached the residence at about 11:00 p.m. on April 8th and told Raphael to turn the music down, a demand with which he complied. Compl. at ¶¶15-16. At approximately 3:30 a.m. on April 9th, several police officers entered the yard and one of them asked plaintiff Raphael for identification. *Id*. at ¶¶20, 22. The police officer then allegedly began assaulting plaintiff Raphael, "hitting and kicking him, and throwing him against the house, throwing him down to the ground, and handcuffing him, all for no lawful reason whatsoever." *Id*. at ¶23. When plaintiff Henry asked the police officer to stop, he was allegedly assaulted, sprayed with mace, and beaten with nightsticks. *Id*. at ¶¶25-27. Plaintiffs Dixon, Sayers, and

---

[1]As will be discussed in Section E, *infra*, planitiffs' papers are permeated with arguments that are either collaterally estopped or irrelevant to the remaining causes of action in the complaint. The court cites plaintiffs' allegations from the complaint so as to examine the case in the light most favorable to the non-moving party.

2

Ruiz came outside to investigate, and when they asked the police officers to stop the assault, they were allegedly sprayed with mace or pepper spray. *Id*. at ¶¶28-29. Plaintiffs Raphael and Henry were arrested and were further assaulted by hitting, kicking, and using nightsticks. *Id*. at ¶31.

The Complaint alleges, in pertinent part, that defendants violated plaintiffs' substantive and procedural due process rights by their warrantless entrance onto the property, and that the County is liable for permitting a pattern and practice of illegal behavior by police officers. The Complaint further alleges that excessive force was used against all plaintiffs, and that plaintiffs Dixon, Sayers, and Ruiz were falsely imprisoned in that they were in custody and were not free to leave the property.[2]

## DISCUSSION

Defendants have moved for partial summary judgment dismissing the municipal liability claim, warrantless entry/trespass claims, any state law claims, and any claims against the Nassau County Police Department as a separate entity.

**A. Summary Judgment Standards**

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most

---

[2]Claims of false arrest, false imprisonment, abuse of process, and malicious prosecution made by plaintiffs Raphael and Henry were dismissed with prejudice by stipulation dated March 1, 2005 and So Ordered by the court on March 14, 2005.

3

favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996). The applicable substantive law determines which facts are critical and which are irrelevant. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322).

A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999). Where, however, evaluation of the non-movant's proof rests on the credibility of the non-movant versus the movant, a genuine issue exists and summary judgment cannot be granted. "Where an issue as to a material fact cannot be

resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *See* Wright, Miller & Kane, *Federal Practice and Procedure,* Vol. 10A, §2726 (quoting Advisory Committee Notes to 1963 amendment of Rule 56(e)).

**B. The Claim of Municipal Liability Against Nassau County**

This claim is brought pursuant to § 1983, which provides a civil cause of action for damages against any person who, acting under the color of law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. *See* 42 U.S.C. § 1983. A municipality may not be held liable under § 1983 for the conduct of its employees solely on the basis of respondeat superior. *See Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). To establish a claim against a municipality under § 1983, a plaintiff must also show that the deprivation was caused by the municipality's custom, practice or policy. *Id.* The defendants argue that there is no evidence of any custom, practice or policy that can result in a finding of municipal liability against the defendant Nassau County.

Beyond the alleged facts of this particular case, plaintiffs have presented neither argument nor a single piece of evidence regarding the existence of a custom or policy in Nassau County. It is well-established that "a single incident in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991); *see also City of Oklahoma v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a

5

municipal policymaker."). Plaintiffs have not presented any evidence of, or even alleged the existence of, similar incidents, and their reliance on the facts alleged in this single incident fail to rise to the level of custom or policy required for municipal liability.

An inference that a custom or policy existed, however, may arise from evidence that the municipality failed to train its employees so as to display a deliberate indifference to the constitutional rights of its citizens. *See City of Canton v. Harris,* 489 U.S. 378, 387 (1989); *Ricciuti,* 941 F.2d at 123. For a municipality's failure to train or supervise to constitute deliberate indifference to the constitutional rights of citizens, plaintiffs must show that (1) a policymaker knows to a moral certainty that employees will confront a given situation, (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation, and (3) the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights. *See Walker v. City of New York,* 974 F.2d 293, 297-98 (2d Cir. 1992).

Plaintiffs may not rely solely upon the events alleged in their complaint as proof of a failure to train as "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993).

Plaintiffs have not cited any evidence regarding the quality of training or whether it was offered at all. They state that the defendant police officers "beat the crap" out of plaintiffs

because they did not care, therefore "they were deliberately indifferent to the rights of the Plaintiffs." Pls. Mem. in Opp. at 5. Finding a municipality liable on a lack of training theory requires a showing that the <u>municipality</u> was deliberately indifferent, not that the individual actors at the particular incident acted with deliberate indifference. Plaintiffs have presented no evidence at all regarding training by the municipality or any conduct whatsoever by the municipality that could have caused the alleged deprivations of constitutional rights.

Plaintiffs' statement that "specifically, the actions of Mulcahy, rose to the level of custom/policy," Pls. Mem. in Opp. at 6, given a generous reading, implies an argument that defendant Mulcahy's rank of Sergeant makes him a policymaker.[3] The mere fact that one of the alleged state actors was a Sergeant does not by itself make him a "policymaker" for purposes of municipal liability. While actions by an individual with final decision-making authority may constitute official policy sufficient to establish municipal liability, that individual must "be responsible for establishing final government policy" for such liability to attach. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986). Even if Sergeant Mulcahy may have been the ranking officer on the scene and thus may have had some decision-making authority over the conduct of the other officers, the mere exercise of discretion is insufficient to establish municipal liability. *See Anthony v. City of New York,* 339 F.3d 129, 139 (2d Cir. 2003); *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir. 2000). Moreover, the Second Circuit, in the *Anthony* case, specifically rejected the argument that a Sergeant's orders on the scene constitute official municipal policy. 339 F.3d at 139. Thus the court finds as a matter of law that Sergeant Mulcahy was not a policymaker for

---

[3] While the plaintiffs bear the burden of proving that the official in question had final policymaking authority and have arguably not carried that burden, the court will nonetheless address the argument.

purposes of § 1983 municipal liability.

The sole evidence presented by plaintiffs is this single incident involving them. Plaintiffs have presented no evidence whatsoever regarding a custom or policy, or a lack of training, and they apparently elected to not even depose anyone from the County regarding a custom, policy, or training.[4] For the reasons stated above, the municipality may not be held liable under § 1983 and defendants' motion for summary judgment on that claim is granted.

**C. New York State Law Claims and Claims against the Nassau County Police Department**

Defendants further seek summary judgment on plaintiffs' New York state law claims and any claims asserted against the Nassau County Police Department. As to the New York state law claims, defendants point to plaintiffs' failure to file a notice of claim. See Defs. Rule 56.1 Stmt at ¶2. Despite the complaint's reference to deprivation of rights secured by the "laws of . . . the State of New York," see Compl. ¶1, plaintiffs now state that they "never brought any state law claims in their Complaint, precisely because there was no Notice of Claim filed." Pls. Rule 56.1 Stmt at ¶2. Accordingly, the court notes that there are no state law claims in this case.

As to any claims against the Nassau County Police Department ("the Department"), defendants state that the Department is an administrative arm of Nassau County and thus cannot be sued. See Defs. Rule 56.1 Stmt at ¶17. Despite the Complaint's references to "defendant THE COUNTY OF NASSAU (including the NASSAU COUNTY POLICE DEPARTMENT)," see Compl. Caption & ¶1, plaintiffs agree that the Department is "not a suable entity in itself." Pls. Rule 56.1 Stmt at ¶17. Accordingly, the court notes that there are no claims against the

---

[4]According to defendants, the plaintiffs "elected to depose 10 individuals who were linked to this incident, and explored no other incident." Defs. Reply Mem. in Supp. at 6.

Department.

**D. Claims for Unreasonable Search**

In their motion papers, the defendants argue that the claims for unreasonable search[5] should be dismissed. Defs. Mem. in Supp. at 9. As a threshold matter, the court agrees that the plaintiffs' allegation that "the Defendants entered that private residence without permission, without a warrant, and without any exigent or other circumstance which would allow such entry," (Compl. at ¶74) must be construed as a Fourth Amendment, and not a Due Process, claim. As the defendants observe, Mr. Raphael was the only plaintiff who resided at 18 Oak Street, and, as he admitted at his deposition, he was using the premises for a commercial venture, a party that guests paid to enter and which had been advertised with a flyer made by Raphael. *See* Defs. Ex. D and Ex. E, Raphael Dep. Tr. 11:26-27. Under these circumstances, the defendants argue, Raphael was the only plaintiff who could have had a reasonable expectation of privacy in those premises, a prerequisite to a Fourth Amendment claim of unreasonable search or seizure. See Defs. Mem. in Supp. at 9-10. The court agrees.

The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims [it] . . . has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois,* 439 U.S. 128, 143 (1978); *see also United States v. Fields*, 113 F.3d 313, 322 (2d Cir. 1997) ("The ultimate focus of Fourth Amendment analysis remains whether the defendant had a reasonable expectation of privacy in the place searched."). Thus, only Raphael could make a Fourth Amendment claim, and, to prevail on that claim, he would have to establish

---

[5]Although defendants also seek dismissal of the trespass claims, plaintiffs acknowledge that they have no such claim since no notice of claim was filed. Pls. Rule 56.1 Stmt at ¶ 3.

that the police lacked probable cause for their entry. He cannot do so, based on his conviction at the criminal trial in state court and the existence of probable cause for the entry.

Probable cause exists "'when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person arrested.'" *Shain v. Ellison,* 273 F.3d 56, 68 (2d Cir. 2001)(quoting *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995)). Here, the police entered Raphael's property in response to complaints of loud noise, and the relevant question is whether they had probable cause to do so. Town of Hempstead Ordinance 144.3 prohibits certain activities that "create a noise disturbance across a real property boundary." (Defs. Ex. I). If there was loud noise, there was probable cause for the police to believe that Raphael was violating the ordinance. Raphael was subsequently found guilty of violating the Town of Hempstead Noise Ordinance, which necessarily required a finding by the jury that there was indeed loud noise. *See* Defs. Exs. F, G & H. Thus, the existence of probable cause is established, and Raphael is precluded from making a Fourth Amendment unreasonable search claim. The jury finding that there was loud noise has further implications as well, and the court turns next to the issue of collateral estoppel.

**E. Collateral Estoppel/Issue Preclusion:**

The plaintiffs' Rule 56.1 Counterstatement is rife with assertions that there was no loud noise and that the police perjured themselves at Raphael's criminal trial, but the court finds that Raphael is precluded from raising those issues, and that they are irrelevant to the other plaintiffs'

10

claims.⁶ Under the doctrine of collateral estoppel, also known as issue preclusion, "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)). A federal court must apply the same preclusive effect, for purposes of collateral estoppel, that a state court would give. *Id.* at 378. "Under New York law, issue preclusion (collateral estoppel) applies when the identical issue necessarily must have been decided in the prior action and will be decisive in the present action and the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Doe v. Pfrommer,* 148 F.3d 73, 79 (2d Cir. 1998) (citation omitted).

All of the requirements for application of the doctrine of collateral estoppel are met in regard to the question of whether there was loud noise on the early morning of April 9, 2000. As noted *supra*, an element of the noise ordinance that Raphael was found to have violated is the existence or creation of loud noise. In finding Raphael guilty, the state court jury necessarily decided that there was loud noise. Second, the issue of whether there was loud noise would be decisive to Raphael's Fourth Amendment claim against the police, because he would have to prove that the purported reason for their entry onto his property - loud noise - was false. Third, Raphael had a full and fair opportunity to contest the existence of loud noise at his trial. Thus, Raphael is collaterally estopped from arguing that there was no loud noise at the time and place in question.

---

⁶The court notes that plaintiffs, in their opposition to the motion, did not address the collateral estoppel argument, nor did they appear for oral argument on that issue, although an opportunity to do so was offered.

The same reasoning applies to his claim that the police perjured themselves at his criminal trial, and the court finds that Raphael cannot raise the issues of loud noise or perjury in this civil trial. He had ample opportunity at his trial and on appeal to pursue those issues and he is estopped from relitigating them in this action. As the defendants note, the Supreme Court has stated that when a plaintiff "seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Defs. Mem. in Supp. at 11 (quoting *Heck v. Humphrey,* 512 U.S. 477, 490 (1994)). Here, Raphael clearly seeks to relitigate the issues that underlie his conviction, but he cannot do so.

Nor can the other plaintiffs raise, at this civil trial, the issues of loud noise and/or perjury at the criminal trial. The court does not base this ruling on a finding that they are collaterally estopped, but rather because those issues are irrelevant to the other plaintiffs' claims of excessive force, false imprisonment, and denial of medical treatment. Whether there was loud noise at the party in the early morning of April 9, 2000, or whether anyone lied at Raphael's criminal trial, are not elements of those claims, and the plaintiffs are barred from offering evidence about those issues.

## SUMMARY

For the reasons set forth in this Memorandum and Order, the municipal liability claim and the unreasonable search claim are dismissed. The parties are on further notice that the court will not allow testimony in this trial regarding the existence of loud noise and/or whether witnesses at Raphael's criminal trial lied about issues necessarily decided by his conviction.

A pretrial conference will be held on **June 28, 2005 at 11:30 a.m.** Although the date for submission of the joint proposed pretrial order has passed, the court acknowledges that the within rulings necessitate additional changes. The joint proposed pretrial order shall be filed electronically, with a hard copy to chambers, no later than **June 24, 2005.** The parties are further directed to confirm this deadline/conference with each other as soon as practicable.

Dated: Central Islip, New York  
       June 17, 2005

SO ORDERED:

/s/ William D. Wall  
WILLIAM D. WALL  
United States Magistrate Judge